## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SYNOVUS BANK, etc., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0116-WS-B |
| | ) |
| The vessel ACCU V, etc., et al., | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for entry of final judgment against defendant Aspen Orleans, L.P. ("Aspen") and on the plaintiff's associated application for attorney's fees and costs.  (Docs. 127-28).  Default was entered against Aspen in March 2012 for failure to plead or otherwise defend, (Doc. 108), and Aspen has not subsequently appeared or sought to set the default aside.  The plaintiff's motion is thus one for entry of default judgment under Rule 55(b).  Because Aspen has not appeared, it is not entitled to notice of the pending motion.  Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact ....  A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true."  *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Thus, "a default judgment cannot stand on a complaint that fails to state a claim."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997).  Rather, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."  *Tyco Fire & Security, LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (emphasis omitted).

[1]

The amended complaint alleges that the plaintiff loaned defendant Accumarine Transportation, L.P. ("Accumarine") several million dollars, that Accumarine is in default under the terms of the note as modified, and that the amount remaining due is $4,185,000, plus interest, attorney's fees and costs, and all other charges and fees, less the $300,000 for which the defendant vessel was sold and less the net sales proceeds of two other vessels sold in other proceedings. (Doc. 58 at 3-4, 6-7). The amended complaint further alleges that Aspen guarantied Accumarine's debt in the amount of $4,185,000. (*Id*. at 4-5). Count II asserts a claim against Aspen for breach of guaranty and seeks recovery of the amount set forth above. (*Id*. at 7-8). There is no question but that these allegations actually state a cause of action and that the amended complaint contains a substantive, sufficient basis for the relief sought.

Aspen is not an infant, incompetent or member of the military, and the requirements of Rule 55(b)(2) and the Servicemembers Civil Relief Act, 50 U.S.C. app. § 521, therefore do not apply. The procedural predicates for entry of default judgment being satisfied, the Court turns to the amount of the judgment to be entered.

"While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and the character of damages." *Capitol Records v. Carmichael*, 508 F. Supp. 2d 1079, 1084 n.4 (S.D. Ala. 2007); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court [on entering default judgment] has an obligation to assure that there is a legitimate basis for any damage award it enters ...."); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (on default judgment, "[d]amages may be awarded only if the record adequately reflects the basis for award ...."); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688 at 58-59 (3rd ed. 1998) ("If the court determines that [the] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Thus,

[2]

the mere granting of default judgment does not establish the plaintiff's entitlement to any quantum of damages.

A hearing to establish damages is not universally required. None is needed "where all essential evidence is already of record ..., such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Securities and Exchange Commission v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Here, suit is brought on a guaranty, which has been submitted along with affidavits from the plaintiff's representative and its counsel, and the plaintiff does not request a hearing. Accordingly, none will be held.

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c). As noted, the amended complaint prays for recovery of $4,185,000, less the net proceeds of three vessel sales, plus interest, costs and attorney's fees. The plaintiff now seeks entry of judgment in the amount of $3,092,553.45, including attorney's fees. The motion for default judgment thus does not seek judgment different in kind or higher in amount than that prayed for in the amended complaint.

The affidavit of the plaintiff's representative establishes that the amount of indebtedness remaining after accounting for the vessel sales and settlements with other guarantors, plus all costs other than attorney's fees, is $2,909.299.28. (Doc. 127, Attachment).

Aspen's guaranty makes it liable "for all Indebtedness … plus all reasonable attorneys' fees, collection costs and enforcement expenses referable thereto." (Doc. 58, Exhibit D at 1, ¶ 4). The "Indebtedness" is defined as "the debt, liability and obligation of Borrower to Lender evidenced by or arising out of that certain Promissory Note" thereafter described. (*Id*. at 1). The guaranty further provides that Aspen "will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or

[3]

enforcement of this Guaranty in any litigation or bankruptcy or insolvency proceedings." (*Id*. at 2, ¶ 5).

By this language, Aspen clearly agreed to pay reasonable attorneys' fees arising from the plaintiff's efforts to enforce Aspen's guaranty. Aspen also clearly agreed to pay reasonable attorneys' fees arising from the plaintiff's efforts to collect the Indebtedness from Accumarine.

It is not clear, however, that Aspen agreed to pay any attorneys' fees arising from the plaintiff's efforts to collect the Indebtedness from other guarantors. Aspen agreed to pay attorneys' fees "referable" to the Indebtedness, which is defined as the debt of Accumarine to the plaintiff. This language may reasonably be read as limiting Aspen's guaranty to efforts to collect from Accumarine, not from other guarantors. The language is thus at least ambiguous in this regard. *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000). The final rule for resolving contractual ambiguity is that of *contra proferentem*, construction against the drafter. *Id*. But since the plaintiff did not address the ambiguity, or even point the Court to the contractual language, *contra proferentem* is the only rule of construction on the table. Since the plaintiff's predecessor by merger plainly drafted the guaranty,[1] the construction less favorable to the plaintiff prevails, and the guaranty will be construed not to require Aspen to pay fees incurred in connection with the plaintiff's efforts to collect from other guarantors.

The plaintiff seeks recovery of $176,365.50 in attorney's fees. The Court has thoroughly reviewed the submitted time records, and it is clear that a substantial portion of these fees were incurred the course of collection efforts against other guarantors. These efforts include, but are not limited to: developing an amended complaint against these guarantors; serving process on the other guarantors; conducting settlement discussions with other guarantors; presenting a motion for summary judgment against one guarantor; engaging in discovery with other guarantors; and participating in various

---

[1] The five guarantors signed identical guaranties, (Doc. 58, Exhibits D-H), an impossibly remarkable coincidence if the plaintiff's predecessor did not draft them.

judicial conferences and related activities with respect to other guarantors.  The following amounts must be excluded from any fee award on this basis:

| Attorney/Paralegal | Hours Excluded | Hourly Rate | Amount Excluded |
|---|---|---|---|
| Ms. Heisterhagen | 69.9 | $200 | $13,980 |
| Mr. Joseph | 19.0 | $385 | $7,315 |
| Mr. Kavanagh | 46.4 | $260 | $12,064 |
| Mr. Lee | 37.1 | $220 | $8,162 |
| Mr. Warren | 4.2 | $265 | $1,113 |
| Ms. Grove | 0.7 | $135 | $94.50 |
| Mr. Harris | 7.3 | $75 | $547.50 |
| Ms. McLain | 1.3 | $120 | $156 |
| Ms. Stober | 2.2 | $120 | $264 |
| Total | | | $43,696.00 |

The balance of the fees incurred, or $132,669.50, fall within the scope of the guaranty, but they must still be "reasonable."  The plaintiff acknowledges the 12-factor test for reasonableness adopted by the Alabama Supreme Court,[2] but it focuses on the following subset:  "the services rendered to Plaintiff in this action, the time expended, expertise required, amount of indebtedness being collected, and rates customarily charged."  (Doc. 128 at 3).  The Court does likewise.

Upon review of the submitted sheets, it appears that all services rendered by counsel were reasonably appropriate to the task at hand.  The time expended, after eliminating the hours excluded above, totals 533.4 hours.  A substantial majority of this time was expended in and before August 2011, when this Court and another confirmed the sale of three vessels securing the loan, which sales generated $1,435,000 towards satisfaction of the debt.  While the total number of hours is rather high, the Court

_____

[2] *See, e.g., Peebles v. Miley*, 439 So. 2d 137, 140-41 (Ala. 1983).

[5]

concludes it is reasonable, considering the multi-million dollar debt at issue and the recovery of approximately one-third of the debt through sales of collateral.[3]

The plaintiff utilized nine lawyers at hourly rates ranging from $200 to $385 and eight paralegals at hourly rates ranging from $75 to $180. The plaintiff provides no evidence that these rates are customarily charged in the Mobile area for similar services,[4] and the Court's experience indicates that lower rates are customary. Less than three months ago, and "[a]fter substantial research," the Court in a commercial collection case declared that "[r]ecent awards [in this District] almost without exception have utilized hourly rates of $220 to $275 for partners, with correspondingly lower rates for associates." *Lifeline Pharmaceuticals, LLC v. Hemophilia Infusion Managers, LLC*, 2012 WL 2600181 at *3 (S.D. Ala. 2012). The plaintiff has not effectively addressed the issue and thus has provided the Court no reason to stray from these parameters.[5]

With respect to paralegals, the Court has this summer reconfirmed $75 as an appropriate hourly rate for the award of contractual fees, at least "absent proof of

---

[3] Given that Accumarine and Aspen did not fight the amended complaint's in personam claims against them but permitted default to be entered against them, the Court might well have reached a different conclusion had not the in rem efforts resulted in a seven-figure recovery.

[4] The relevant fee is "[t]he fee customarily charged in the locality for similar legal services," *Peebles*, 439 So. 2d at 141-42, such as "the Mobile area." *Id.* The plaintiff acknowledges this geographical restriction. (Doc. 128 at 2). Thus, Mr. Joseph and Mr. Warren, who hail from counsel's Birmingham office, are restricted to a Mobile rate.

The plaintiff's affiant states he is familiar with the fees customarily charged in the Mobile area to clients with businesses similar to the plaintiff's in connection with litigation of the same or similar nature, but he does not share any information about such fees. Instead, he concludes generally that, considering the totality of the time expended, expertise required, amount of debt being collected, and rates customarily charged, he believes his firm's fees to be reasonable. (Doc. 128, Attachment). Such glittering generalities are not helpful to the plaintiff or to the Court.

[5] The plaintiff generally invokes "expertise required" as a factor for the Court to consider in evaluating the reasonableness of its fee request, (Doc. 128 at 3), but it has not explained what unusual expertise was both required by the case and possessed by the participating attorneys that would justify an hourly rate above the rates customarily charged in the community for similar services.

[6]

unusually advanced qualifications or expertise." *SE Property Holdings, LLC v. Stradley*, 2012 WL 2130806 at *4 (S.D. Ala. 2012) (internal quotes omitted).  Again, since the plaintiff has not effectively supported a higher rate, the Court will utilize the customary figure.

The Court is aware from counsel's website of the experience of each of its attorneys.  Using that information and the customary rates described above, the Court assigns the following as reasonable hourly rates for each attorney and paralegal providing services in this matter:

| Attorney/Paralegal | Requested Rate | Reasonable Rate | Rate Reduction |
|---|---|---|---|
| Ms. Creswell | $320 | $200 | $120 |
| Ms. Heisterhagen | $200 | $150 | $50 |
| Mr. Joseph | $385 | $275 | $110 |
| Mr. Kavanagh | $260 | $260 | -0- |
| Mr. Lee | $220 | $150 | $70 |
| Mr. Phillips | $250 | $250 | -0- |
| Mr. Turnipseed | $265 | $200 | $65 |
| Mr. Warren | $265 | $175 | $90 |
| Mr. Woods | $250 | $200 | $50 |
| Ms. Anderson | $135 | $75 | $60 |
| Ms. Grove | $135 | $75 | $60 |
| Mr. Harris | $75 | $75 | -0- |
| Mr. Ivey | $180 | $75 | $105 |
| Ms. Lang | $120 | $75 | $45 |
| Ms. McLain | $120 | $75 | $45 |
| Ms. Stober | $120 | $75 | $45 |
| Ms. Thompson | $125 | $75 | $50 |

[7]

The Court concludes that, once the hourly rates are adjusted as set forth above, the resulting fee will constitute a reasonable fee awardable against Aspen.  The reductions in rate result in the following reductions in the plaintiff's awardable fees:

| Attorney/Paralegal | Rate Reduction | Hours Billed | Fee Reduction |
|---|---|---|---|
| Ms. Creswell | $120 | 0.4 | $48 |
| Ms. Heisterhagen | $50 | 10.3 | $515 |
| Mr. Joseph | $110 | 70.5 | $7,755 |
| Mr. Kavanagh | $0 | 76.0 | -0- |
| Mr. Lee | $70 | 166.8 | $11,676 |
| Mr. Phillips | $0 | 75.5 | -0- |
| Mr. Turnipseed | $65 | 7.4 | $481 |
| Mr. Warren | $90 | 66.7 | $6,003 |
| Mr. Woods | $50 | 2.9 | $145 |
| Ms. Anderson | $60 | 2.4 | $144 |
| Ms. Grove | $60 | -0- | -0- |
| Mr. Harris | $0 | 7.4 | -0- |
| Mr. Ivey | $105 | 0.6 | $63 |
| Ms. Lang | $45 | 0.9 | $40.50 |
| Ms. McLain | $45 | 27.9 | $1,255.50 |
| Ms. Stober | $45 | 2.8 | $126 |
| Ms. Thompson | $50 | 7.7 | $385 |
| Total | | | $28,637 |

The residual, reasonable attorney's fee, which will be included in the judgment against Aspen, is $104,032.50.

The plaintiff seeks expenses incurred by counsel in the amount of $7,888.67.  The Court has reviewed these expenses and finds that only the client pickup on April 19,

[8]

2012, the client lunch of April 27, 2012 and the overnight shipment of May 31, 2012 are clearly related to efforts directed against the other guarantors.  The Court will exclude this $50.61.  The Court concludes that the remaining $7,838.07 in expenses was reasonably incurred and reasonable in amount, and it will be included in the judgment against Aspen.

In summary, the plaintiff's motion for default judgment is **granted**.  The plaintiff's application for attorney's fees and costs, construed as a motion for such relief, is **granted in part** and **denied in part** as set forth above.  The plaintiff is entitled to judgment against Aspen in the amount of $3,020,169.95.  Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 25th day of September, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

[9]